IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| MARQUISA WINCE and<br>MARY CANTWELL | PLAINTIFFS |
| v.   Case No. 4:20-cv-1274 BSM | |
| JOHN THURSTON, in his official capacity as the Secretary of State of Arkansas and his official capacity as Chairman of the Arkansas State Board of Election Commissioners; SHARON BROOKS, in her official capacity as a member of the Arkansas State Board of Election Commissioners; JAMES HARMON SMITH, III, in his official capacity as a member of the Arkansas State Board of Election Commissioners; BILENDA HARRIS-RITTER, in her official capacity as a member of the Arkansas State Board of Election Commissioners; CHARLES ROBERTS, in his official capacity as a member of the Arkansas State Board of Election Commissioners; WILLIAM LUTHER, in his official capacity as a member of the Arkansas State Board of Election Commissioners; and JAMES SHARP, in his official capacity as a member of the Arkansas State Board of Election Commissioners | DEFENDANTS |

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Arkansas law sets an arbitrary deadline where all absentee ballots must be counted before the polls close on election day. Even in a normal year, there are absentee ballots that have not been counted by that deadline. *See* (Inman Affidavit, Dkt. No. 2, at 17-20). In 2020, more than 118,000 Arkansans requested absentee ballots two weeks before election day with more than 70,000 already having cast their votes. It will be impossible for election officials to count all absentee ballots.

Plaintiffs Marquisa Wince and Mary Cantwell, two absentee voters, bring this case for one simple reason: they want a legally enforceable assurance that if valid, properly submitted absentee ballots have not been counted by the time polls close, election officials will not stop counting. Attorney General Leslie Rutledge says in a press release that she wants the same thing. *See* Linda Satter, *Suit Filed Over Law on Ballot Counting*, ARK. DEMOCRAT GAZETTE, Oct. 24, 2020, at A5 (quoting a spokeswoman for the Attorney General as saying "every timely and validly cast ballot must be counted regardless of how long that process takes," and quoting a press release from the Attorney General saying that "when a ballot is cast, it will be counted."). But the Attorney General's actions speak louder than her words. Rather than working with Plaintiffs to ensure that the arbitrary deadline will not be enforced, the Attorney General used delay tactics to prevent the Pulaski County Circuit Court from promptly scheduling a hearing when Ms. Wince and Ms. Cantwell filed their original action last week. *See* (Dkt. No. 1); *see also* Not. Of Removal, *Wince, et al. v. Thurston, et al.*, 4:20-cv-01278 (E.D. Ark. 2020) (Dkt. No. 1). Ms. Wince and Ms. Cantwell ask that this Court enter a preliminary injunction enjoining enforcement of the arbitrary deadline to complete counting absentee ballots so that everyone, the Attorney General included, can be assured that "when a ballot is cast, it will be counted." *Id.*

## BACKGROUND

Ms. Wince and Ms. Cantwell are qualified Arkansas voters who already submitted absentee ballots in the upcoming general election. As stated more fully in the Amended Complaint (Dkt. No. 9), which is incorporated by reference pursuant to Federal Rule of Civil Procedure 10(c), Arkansas's Absentee Ballot Statute gives election officials a maximum of 11 hours to open and count all absentee ballots. *See* Ark. Code Ann. § 7-5-416 (providing that election officials can begin counting absentee ballots "no earlier than 8:30 a.m. on election day" and must finish

2

counting "prior to the closing of the polls"). In reality, officials have far less time to complete the counting of every absentee ballot. Indeed, while the statute provides that election officials must "meet and process, canvass, and count absentee ballots . . . prior to the closing of the polls on election day," Ark. Code Ann. § 7-5-416(d), the statute is drafted in such a way that officials should not even *begin* counting absentee ballots until *after* the polls close. *See* Ark. Code Ann. § 7-5-411(a)(1) (providing that an absentee ballot is properly cast so long as it is delivered to the county clerk by mail or designated bearer up to the time the polls close); Ark. Code Ann. § 7-5-416(b)(1)(M) (prohibiting election officials from beginning to count any absentee ballots until "all of the inner envelopes containing the ballots have been placed in the ballot box").

While Ms. Wince and Ms. Cantwell submitted their absentee ballots far in advance of election day, they are equally at risk of not having their votes counted as someone who submitted their ballot just before the deadline. Absentee ballots are not counted in the order in which they arrive. Rather, after election officials finish processing all absentee ballots, they shake the ballot box to mix all of the absentee ballots before counting a single ballot. Ark. Code Ann. § 7-5-416(b)(1).

## ARGUMENT

Ms. Wince and Ms. Cantwell seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Their requested relief is exceedingly narrow. They simply ask that this Court enjoin enforcement of two specific provisions in the Absentee Ballot Statute (collectively, the "Count Deadline"): Ark. Code Ann. § 7-5-416(a)(5)(A), which provides "Absentee and early votes shall be counted prior to the closing of the polls on election day as provided under this section;" and Ark. Code Ann. § 7-5-416(d), which provides "It is the intent of this section to require

the election officials for absentee ballots to meet and process, canvass, and count absentee ballots according to this section prior to the closing of the polls on election day."

## I. Legal Standard For Granting A Preliminary Injunction

In determining whether to grant a motion for preliminary injunction, this Court generally weighs the following four considerations: (1) the threat of irreparable harm to the moving party; (2) the movant's likelihood of success on the merits; (3) the balance between the harm to the movant if the injunction is denied and the harm to other party if the injunction is granted; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (en banc). As the Eighth Circuit explained:

> In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties' litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

*ld.* at 113.

## II. Ms. Wince And Ms. Cantwell Are Likely To Succeed On The Merits

Ms. Wince and Ms. Cantwell seek a declaratory judgment that the Count Deadline violates two sections of the Arkansas Constitution. Article III, Section 2—entitled "Right of Suffrage"—provides "Elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage; nor shall any law be enacted whereby such right shall be impaired or forfeited, except for the commission of a felony, upon lawful conviction

thereof." Ark. Const. art. III, § 2.  Furthermore, Article III, Section 1 provides in relevant part that "*any person* may vote in an election in this state" so long as such person:

1. Is a United States Citizen;

2. Is an Arkansas Resident;

3. Is at least 18 years old;

4. Is lawfully registered to vote;

5. Provides photographic identification; and

6. Complies with all additional laws regulating elections necessary for his or her vote to be counted.

Ark. Const. art. III, § 1 (emphasis added).  By explicitly recognizing the right to vote, the Arkansas Constitution goes further than even the United States Constitution, where the right is only implicitly recognized.  Joshua A. Douglas, *The Right to Vote Under State Constitutions*, 67 VAND. L. REV. 89 (2014) ("Virtually every state constitution includes direct, explicit language granting the right to vote, as contrasted with the U.S. Constitution, which mentions voting rights only implicitly.").

Ms. Wince and Ms. Cantwell are likely to succeed on the merits of their declaratory judgment action.  Under Arkansas law, "the General Assembly does not have the power to override a constitutional provision" and, to the extent a statute "directly contradicts the constitution, it must fail." *Bd. of Trustees of Univ. of Arkansas v. Andrews*, 2018 Ark. 12, 11, 535 S.W.3d 616, 622. In determining whether there is a direct conflict between the Arkansas Constitution and a statue, this Court "interpret[s] the constitutional provision . . . precisely as it reads." *Id.*, 2018 Ark. 12, at 10, 535 S.W.3d at 622.  Article III, Section 2 could not be any clearer:  no power, including the legislature, "shall ever interfere to prevent the free exercise of the right of suffrage; *nor shall any*

*law be enacted whereby such right shall be impaired or forfeited, except for the commission of a felony, upon lawful conviction thereof.*" Ark. Const. art. III, § 2 (emphasis added). And Article III, Section 1 provides that a person may vote in this state so long as they meet certain qualifications and comply with election law. Yet the Count Deadline categorically prohibits counting valid absentee ballots from qualified voters simply because election officials were unable to count all ballots before the polls closed on election day. The legislatively enacted deadline directly contradicts the Arkansas Constitution, meaning it is unconstitutional. *See Andrews*, 2018 Ark. 12, at 11, 535 S.W.3d at 622 (holding that a state statute was unconstitutional because it directly conflicted with the Arkansas Constitution). Ms. Wince and Ms. Cantwell are likely to be successful on the merits and this Court should enter a preliminary injunction enjoining enforcement of the Count Deadline in the upcoming general election.

### III.   Absent An Injunction, There Is A Threat Of Irreparable Harm To Ms. Wince And Ms. Cantwell

Enjoining enforcement of the Count Deadline in the upcoming general election is proper because there is a threat of irreparable harm to Ms. Wince and Ms. Cantwell. "A threat of irreparable harm exists when a party demonstrates a harm that may not be compensated by money damages in an action at law." *Libertarian Party of Arkansas v. Thurston*, 394 F. Supp. 3d 882, 919 (E.D. Ark. 2019), *aff'd*, 962 F.3d 390 (8th Cir. 2020) (enjoining Arkansas ballot access statute and finding that plaintiffs' inability to gain ballot access for the Libertarian Party constituted a threat of irreparable harm). If election officials enforce the Count Deadline, many absentee ballots will not be counted and those voter's constitutional right of suffrage with be forfeited. Such an infringement is irreparable harm. *Id.*; *see also Muntaqim v. Hobbs*, 2017 Ark. 97, 4–5, 514 S.W.3d 464, 468 (recognizing that plaintiff the denial of First Amendment rights, even for a minimal amount of time, is irreparable harm).

### IV.     Balancing Harm Also Favors Plaintiffs

Entering a preliminary injunction is also proper because the balance between Plaintiffs' irreparable harm and any injury that may be suffered by Defendants weighs heavily in favor of Plaintiffs.  The harm posed to Plaintiffs is clear and significant:  their votes will not be counted despite the fact that they are qualified voters, followed all of the rules for voting absentee, and voted well in advance of election day.  Conversely, there is no harm for Defendants.  Plaintiffs are not asking that this Court change any procedures on voting or impose any additional obligations on Defendants.  All Plaintiffs request is that this Court enter a narrow order directing Defendants (together with their agents, servants, and employees, and all persons in active concert or participation with them) to not refuse to count otherwise valid absentee ballots simply because counting was not complete before polls close on November 3, 2020.  Publicly and in their filings *in this consolidated case*, Defendants have indicated that they intend to disregard the deadline at issue.  *See* Not. Of Removal, ¶ 4, *Wince, et al. v. Thurston, et al.*, 4:20-cv-01278 (E.D. Ark. 2020) (Dkt. No. 1).  Accordingly, the relief requested by Plaintiffs would not harm Defendants.

### V.     Entering A Preliminary Injunction Is In The Public Interest

Public interest also weighs in favor of Plaintiffs.  Entering a preliminary injunction in this action ***does not*** open the door to accepting absentee ballots that should not be accepted under state law, create voter confusion, or impose any burden on Defendants.  A preliminary injunction would not even delay certification of election results, as absentee officials are already required to count absentee ballots received from armed services members and qualified electors outside the United States that arrive up to ten days after election day.  *See* Ark. Code Ann. § 7-5-411(a)(1).  Granting a preliminary injunction simply ensures that absentee officials count all properly submitted absentee ballots.  That is in the public interest.

## VI.     Nominal Security

Federal Rule of Civil Procedure 65 provides that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Where, as here, Defendants will suffer no costs or damages as a result of a preliminary injunction, this Court should only require nominal security.  *See Thurston*, 394 F. Supp. 3d at 920 (declining to require security where there was not any record evidence that the state would suffer financial harm if it was wrongfully enjoined).  Ms. Wince and Ms. Cantwell ask that the Court require only a nominal bond of $1.

**CONCLUSION**

Over 100,000 Arkansans have requested absentee ballots in the upcoming general election and more than 70,000 Arkansans have already voted absentee.  Marquisa Wince and Mary Cantwell are just two of these voters.  Yet the arbitrary deadline imposed by Arkansas's Absentee Ballot statute puts all of these absentee votes at risk.

Ms. Wince and Ms. Cantwell have shown a likelihood that they will be successful on the merits of their declaratory judgment action challenging the constitutionality of the Count Deadline under the Arkansas Constitution.  They will suffer irreparable harm in the absence of an injunction.  Accordingly, they ask that this Court enter a preliminary injunction preventing enforcement of Ark. Code Ann. § 7-5-416(a)(5)(A) and Ark. Code Ann. § 7-5-416(d) in the upcoming 2020 general election.

> John E. Tull, III
> Ark. Bar No. 84150
> Christoph Keller
> Ark. Bar No. 2015145
> Attorney for Plaintiffs Marquisa Wince and Mary Cantwell
> QUATTLEBAUM, GROOMS & TULL PLLC
> 111 Center Street, Suite 1900
> Little Rock, Arkansas 72201
> Telephone:    (501) 379-1700
> Facsimile:    (501) 379-1701
> Email:        jtull@qgtlaw.com
>               ckeller@qgtlaw.com