# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**MARQUISA WINCE and**                                              **PLAINTIFFS**
**MARY CANTWELL**

**v.**                          **CASE NO. 4:20-CV-01274-BSM**

**JOHN THURSTON,** *et al.*                                        **DEFENDANTS**

## ORDER

Plaintiffs' motion for a preliminary injunction [Doc. No. 10] is denied.

## II. BACKGROUND

Plaintiffs seek to enjoin defendants from enforcing Ark. Code Ann. §§ 7-5-416(a)(5)(A), (d), which state that absentee ballots must be counted by the time the polls close on election day.   They argue that this "artificial" deadline violates their right to vote under both the Arkansas and United States Constitutions because it may result in their votes going uncounted.

Counting absentee ballots is a two-step process.  Ark. Code Ann. §§ 7-5-416(b)–(d). In the first step, a county election official opens the ballot's outer envelope to verify its contents.  *Id*. § 7-5-416(b)(1).  Inside the outer envelope is an affidavit that verifies the voter's information and an inner envelope that contains the marked ballot.  If there are no challenges to the ballot's validity, the official places the sealed inner envelope in the ballot box.  Typically, election officials may not begin the first step until the Tuesday before election day.  *Id*. § 7-5-416(a)(1).  In the second step, which begins at 8:30 a.m. on election day, the election official "thoroughly" shakes the ballot box to mix the ballots.  Then the

official opens the ballot box and canvases and counts the ballots.  Ark. Code Ann. §§ 7-5-416(a)(1), (b)(1).

To address "an anticipated increase in absentee voting" in the November 3, 2020, General Election due to COVID-19, Arkansas Governor Asa Hutchinson issued an executive order (EO) permitting county election officials to begin the first step fifteen days before election day.  Exec. Order No. 20-44, at 4.  The EO is silent as to when officials must finish counting absentee ballots, but it provides that "strict application of certain provisions of Arkansas Code may prevent, hinder, or delay necessary action in responding to the COVID-19 emergency."  Exec. Order No. 20-44 at 4.

Plaintiff Mary Cantwell is a longtime resident of Arkansas and always votes at the polls, but she chose to vote absentee this year in order to protect herself from COVID-19.  She returned her absentee ballot in person well in advance of the deadline for doing so.  She later learned that her ballot may not be counted because the local election officials may not be able to finish counting the extremely large number of  absentee ballots before the polls close on election day.  She would have voted in person had she known that her vote may not be counted.  This is causing her a great amount of distress.

Plaintiff Marquisa Wince, like Ms. Cantwell, voted absentee because she is concerned about COVID-19.  She also returned her ballot early.

Susan Inman has been involved in running elections in Arkansas since 1994.  She served as the Pulaski County Election Director for approximately twelve years and as director

2

of elections for the Arkansas Secretary of State for three years.  She now operates a non-profit that teaches best practices for county elections officials.  Ms.  Inman testified as to the extremely large volume of absentee ballots that have been returned this election year.  She also stated that she believes that many county elections commissions will be unable to process all of the absentee ballots before the close of the polls on election day.  She stated, however, that this is not unusual.  In fact, county elections officials face this problem in almost every election, and when it occurs, they simply finish counting the absentee ballots, regardless of the time of evening.  She called Daniel Shults, the Director of the Arkansas State Board of Election Commissioners, and asked whether the state election commission will stop absentee ballot counting when the polls close.  He told her that every valid absentee ballot will be counted, just as they have in every other election.

Mr. Shults testified that he agrees with plaintiffs that all valid absentee ballots should be counted, regardless of whether the counting is completed by the time the polls close.  He testified that the statute has never been interpreted to require that all counting must be stopped once the polls close.  His testimony was consistent with Ms. Inman's testimony that county elections officials routinely continue counting absentee ballots after the polls close.  He states that this year will be no different.

The State Board of Election Commissioners met while the hearing was being conducted.  During a two-minute break, defense counsel reported that the state election board issued Declaratory Order 2020-002 in response to the Greene County Board of Election

3

Commissioners' question regarding the issue in dispute.  That order provides that:

> The SBEC states unequivocally that state election law requires the CBEC to count every [absentee] ballot that is returned by the statutory deadlines. . .even if the actual process of counting continues past 7:30 p.m. on election night.

Shults signed the Order from the witness stand and offered it as an exhibit.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008).  Whether to grant such relief is within the sound discretion of the district court.  *See Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).  A party seeking a preliminary injunction must prove that: (1) it will suffer irreparable harm if the injunction is denied; (2) the harm to the movant, if the injunction is denied, outweighs the harm to the non-movant if the injunction is granted; (3) there is a likelihood of success on the merits; and (4) an injunction is in the public's interest.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

## III. DISCUSSION

A.   <u>Standing</u>

Standing is a jurisdictional prerequisite that must be determined before the merits of a suit may be reached.  *City of Clarkson Valley v. Mineta*, 495, F.3d 567, 569 (8th Cir. 2007).  To have standing, plaintiffs must demonstrate (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) the likelihood that the

injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The injury must be sufficiently concrete and particularized, rather than speculative or hypothetical.  *Id*. at 560.

Plaintiffs, although sincere, have not demonstrated an injury in fact.  Although they argue that they "are equally at risk of not having their votes counted as someone who submitted their ballot just before the deadline,"  Br. Mot. Prelim. Inj. at 3, they fail to show that they *"would* [] be directly affected" by the statute's absentee ballot counting deadline. *Lujan*, 504 U.S. at 556 (emphasis added).  Plaintiffs' argument that there is a possibility that their votes will not be counted is "entirely conjectural."  *Id*. at 571.

Although pre-enforcement challenges to statutes are permissible, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014), plaintiffs' alleged injury is not sufficiently concrete.  *See id*. (arrest or prosecution may justify pre-enforcement review). Without an injury in fact, plaintiffs cannot show the requisite causal connection between an alleged injury and enforcement of the statute.  Further, with no particularized injury or causal connection, any harm alleged could not be redressed by a favorable opinion. *See Lujan*, 504 U.S. at 561.

B.   Irreparable Harm

Plaintiffs have not shown that they will be irreparably harmed, absent injunctive relief. At the preliminary injunction hearing, both parties acknowledged that since section 7-5-416 was enacted, it has been the practice of election officials to count all absentee ballots, even

after the closing of the polls on election day.  Further, during the hearing, the State Board of Election Commissioners issued a declaratory order, advising that "it would be a violation of state election law to fail to count all ballots which are eligible to be counted regardless of how long the process takes."  Decl. Order No. 2020-002.  Consequently, the State of Arkansas agrees with plaintiffs that all absentee ballots, including the plaintiffs' ballots,  will be counted if they comply with the law, notwithstanding whether they have been counted by the time the polls close.

    C.   <u>Likelihood of Success on the Merits</u>

Even if plaintiffs had standing, they have failed to demonstrate a likelihood of success on the merits.  This is because federal courts should avoid altering state voting laws when there is "inadequate time to resolve [] factual disputes" in the time period shortly before an election.  *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (*per curium*).  Plaintiffs filed their motion for a preliminary injunction on October 27, 2020, one week before the November 3, 2020, General Election.  Doc. No. 10.  The day before plaintiffs filed their motion, the Supreme Court denied an application to vacate the Seventh Circuit's stay of an injunction concerning Wisconsin's election-day deadline for absentee ballots.  *See Democratic Nat'l Comm. v. Wisc. State Leg.*, No. 20A66 (U.S. Oct. 26, 2020).  In that case, the district court ordered changes to Wisconsin's election laws six weeks before the November 3, 2020 General Election.  *Id*.  Here, altering Arkansas's absentee ballot counting statute less than a week before the election would almost certainly result in increased voter confusion.  *See*

*Purcell*, 549 U.S. at 4–5.  Given this time-frame, plaintiffs cannot demonstrate a likelihood of success on the merits.

        D.      <u>Public Interest and Balance of the Harms</u>

Given the findings above, there is no need to address these requirements.

IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction [Doc. No. 10] is denied.

IT IS SO ORDERED this 28th day of October, 2020.

                                                   _____
                                         UNITED STATES DISTRICT JUDGE

7