# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

MARQUISA WINCE; and
MARY CANTWELL,

PLAINTIFFS,

v.                              No. 4:20-CV-1274-BSM

JOHN THURSTON, in his official capacity
as the Secretary of State of Arkansas and
his official capacity as Chairman of the Arkansas
State Board of Election Commissioners; et al.,

DEFENDANTS.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Prior to the general election last Tuesday, November 3, this Court ruled that Plaintiffs do not have standing to bring the claims in their amended complaint. *See* Order, DE 18 at 4-5. Contrary to Plaintiffs' interpretation of Arkansas law, as this Court noted, "county elections officials routinely continue counting absentee ballots after the polls close." *Id.* at 3. As the Court said, "Plaintiffs' argument that there is a possibility that their votes will not be counted is 'entirely conjectural.'" *Id.* at 5 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 (1992)). "[A]lthough sincere," Plaintiffs' fear that Defendants would interpret Arkansas law to impose an arbitrary counting deadline on Election Day does not suffice to "demonstrate[] an injury in fact." *Id.* And "with no particularized injury or causal connection, any harm alleged could not be redressed by a favorable opinion." *Id.*

This Court's conclusion that Plaintiffs lack standing remains valid after Election Day. Because "[s]tanding is a jurisdictional prerequisite that must be determined before the merits of a suit may be reached," *id.* at 4, Defendants respectfully request that the Court now dismiss this case for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1).

Lacking subject-matter jurisdiction, this Court need not consider whether Plaintiffs have stated a claim upon which relief can be granted.  *See* Rule 12(b)(6).  If the Court were to consider that question, however, it should alternatively dismiss this lawsuit for failure to state a claim.  As the brief that follows demonstrates, Plaintiffs have not stated a claim upon which relief can be granted for largely the same reasons that they were not likely to succeed on the merits at the preliminary-injunction stage.  Whether for lack of jurisdiction or for failure to state a claim, this Court should grant Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs are Arkansas residents who allegedly cast absentee ballots for the November 2020 general election.  Am. Compl., DE 9 ¶¶ 4-5.  On October 23, 2020, they filed a complaint in the Circuit Court of Pulaski County, Arkansas, claiming that Arkansas Code Annotated section 7-5-416 violates the United States Constitution and the Arkansas Constitution.  Defendants promptly removed the action to this Court.  *See* Notice of Removal, DE 1.  Because the state court reached out to Defendants regarding a hearing, Defendants informed the state court that the case was being removed.  At this point, despite claiming no knowledge of Defendants' removal, Plaintiffs tried to file an amended complaint in state court about half-an-hour after Defendants removed, in an apparent attempt to defeat this Court's jurisdiction.  *See* Mot. to Voluntarily Dismiss, DE 6 ¶ 5.  And despite this Court's indisputable jurisdiction over this lawsuit, Plaintiffs proceeded to re-file that amended complaint as a new state-court lawsuit the following business day.  *See* Notice of Removal, *Wince v. Thurston*, No. 20-1278 (E.D. Ark. Oct. 26, 2020), DE 1.

Defendants also removed that case and sought consolidation of both federal-court lawsuits.  *See* Mot. to Consolidate, *Wince v. Thurston*, No. 20-1278 (E.D. Ark. Oct. 26, 2020), DE 5.  Given that both lawsuits are essentially identical, Plaintiffs have now dropped their opposition to

proceeding before this Court.  *See* Withdrawal of Mot. to Dismiss, DE 7.  And this Court has since consolidated both cases.  *See* Order, *Wince*, No. 20-1278 (Oct. 28, 2020), DE 13.

Plaintiffs' central claim is that Arkansas law prohibits county election officials from counting any absentee ballots after "the closing of the polls on election day."  Ark. Code Ann. 7-5-416(a)(5)(A); *see* Am. Compl. ¶ 26.  Yet that statutory language has existed since 2013.  *See* 2013 Ark. Act 1211, sec. 3, 89th General Assembly, Reg. Sess. (Apr. 12, 2013) (amending Ark. Code Ann. 7-5-416(a)(5)(A)).  And Plaintiffs have not alleged that any election official has ever shared their interpretation of Section 416(a)(5)(A).  *See* Am. Compl. ¶¶ 20-39 (discussing at length the content of Arkansas law but setting forth no factual allegations).

What's more, although Plaintiffs attach to their complaint an affidavit from Susan Inman to support their claims, Ms. Inman nowhere attests that a ballot has ever been rejected solely based on an arbitrary counting deadline like the one that Plaintiffs imagine Section 416 imposes.  *See* Inman Affidavit, DE 9-1, Ex. A ¶¶ 6-10.  As a former member of the Pulaski County Board of Election Commissioners, Ms. Inman has "been involved in running elections in Pulaski County since 1994."  *Id.* ¶ 2.  She left that post in 2013 only because she ran for Secretary of State.  *Id.*  If Ms. Inman has no evidence of county election officials interpreting Arkansas law to create an arbitrary 7:30 PM deadline, then such evidence is unlikely to exist.  It comes as no surprise, then, that Plaintiffs' counsel told the media last week that the interpretation of Section 416 hypothesized by the complaint "has never been enforced."  Linda Satter, *Suit filed over law on ballot counting*, Ark. Democrat-Gazette (Oct. 24, 2020).[1]

Plaintiffs must admit that Section 416 "has never been enforced" according to their interpretation because all the evidence shows that no Arkansas election official has ever shared their

---

[1] https://www.arkansasonline.com/news/2020/oct/24/suit-filed-over-law-on-ballot-counting/

interpretation.  Quite the opposite.  The media's coverage of Plaintiffs' lawsuit has caused confusion among election officials, who have "never understood this requirement to prohibit the processing of timely and sufficient absentee ballots which are waiting to be counted simply because the process could not be completed prior to 7:30pm."  Shults Decl., DE 14-1 (attached "Petition for a Declaratory Order").  Indeed, this confusion led the Green County Election Commission to submit a petition requesting that the State Board of Election Commissioners issue a declaratory order answering the following question: "Does Arkansas Code Annotated section 7-5-416(a)(5)(A) or section 7-5-416(d) prohibit the counting of timely and sufficient absentee ballots after the close of the polls on election day?"  *Id.*  At its regularly scheduled October 28, 2020 meeting, the State Board issued an order answering this question.  Order, DE 18 at 3-4; *see* Shults Decl. ¶ 7.  "Once issued, that declaratory order . . . put to rest any notion that county election officials must stop counting absentee ballots at 7:30 PM on election day."  Shults Decl. ¶ 7.

As this Court has already acknowledged, the State Board of Election Commissioners, the members of which are defendants, has now "state[d] unequivocally that state election law requires the [county boards of election commissioners] to count every [absentee] ballot that is returned by the statutory deadlines . . . even if the actual process of counting continues past 7:30 p.m. on election night."  Order, DE 18 at 4 (quoting State Board's Declaratory Order No. 2020-002 (Oct. 28, 2020)).[2]

---

[2] The version of the Declaratory Order submitted at the preliminary-injunction hearing contained two minor typographical errors that the State Board has since corrected.  Attached as Exhibit 1 to this brief is a corrected order; and attached as Exhibit 2 is a marked-up version that highlights these two corrections, which appear on pages 1 and 6.

The theory of Plaintiffs' lawsuit, therefore, is that if county election officials were to adopt a novel interpretation of Section 416—an interpretation Plaintiffs' counsel *admits* no Arkansas official has ever adopted, and that state election officials have now expressly repudiated in a public agency document—they would then be violating the federal and state constitutions.

## STANDARD OF REVIEW

A complaint that fails to demonstrate the Court's jurisdiction or state a claim upon which relief can be granted must be dismissed.  Fed. R. Civ. P. 12(b)(1), (6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility test involves two steps.  First, this Court must determine which allegations are conclusory and, therefore, should be ignored.  *See Iqbal*, 556 U.S. at 678.  Second, the non-conclusory, factual allegations must be evaluated to determine whether they contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  If the factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then the complaint fails to show a plausible claim for relief.  *Id*. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

"Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts."  *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008) (citing *Osborn v. United States*, 918 F.2d 724, 728-30 (8th Cir. 1990)).  At the pleading stage, courts apply the Rule 12(b)(6) standard to the challenge to jurisdiction, and dismissal under Rule 12(b)(1) is appropriate "if the plaintiff fails to allege an element necessary for subject matter jurisdiction."  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016); *see Titus v. Sullivan*, 4 F.3d 590, 593

(8th Cir. 1993).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  *Carlsen*, 833 F.3d at 908 (quoting *Osborn*, 918 F.2d at 729 n.6).

To be entitled to a permanent injunction, Plaintiffs plausibly allege that "*actual* success on the merits."  *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008) (emphasis added).  Only if Plaintiffs have actually succeeded on the merits does this Court go on to consider the other injunction factors: "the threat of irreparable harm" to Plaintiffs; the balance between that threat and the harm an injunction will inflict upon Arkansas and its citizens; and "the public interest."  *Id.*  In this way, the permanent-injunction standard resembles the "more rigorous" standard that applies where parties seek to preliminarily enjoin "a duly enacted state statute."  *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc). Requiring a rigorous showing of success on the merits ensures that Arkansas's "presumptively reasonable democratic processes" are thwarted "only after an appropriately deferential analysis." *Id.* at 733.

ARGUMENT

## I.  Plaintiffs present no justiciable controversy.

As discussed at the outset, this Court has already determined that Plaintiffs lack standing. *See* Order, DE 18 at 4-5.  That determination was correct.  Plaintiffs have shown only a "speculative or hypothetical" injury.  *Id.* at 5.  Section 416 in its current form has been on the books since 2013.  *See* 2013 Ark. Act 1211, sec. 3, 89th General Assembly, Reg. Sess. (Apr. 12, 2013) (amending Ark. Code Ann. 7-5-416(a)(5)(A)).  Plaintiffs have not alleged that any election official anywhere in Arkansas has ever shared their peculiar interpretation of Section 416(a)(5)(A). *See* Am. Compl. ¶¶ 20-39 (discussing at length the content of Arkansas law but containing no factual allegations).  Thus there is no evidence—nor even any allegation—that Plaintiffs or any

other voter will be injured by Plaintiffs' imagined 7:30 PM deadline.  This lawsuit therefore does

not present a justiciable case or controversy, and this Court should dismiss it for lack of subject-

matter jurisdiction.

No matter whether it's framed in terms of ripeness, standing, mootness, or a lack of ad-

versity, Plaintiffs' lawsuit fails as a matter of law.  Indeed, the Supreme Court has explained that

"[t]he various doctrines of 'standing,' 'ripeness,' and 'mootness,' . . . are but several manifesta-

tions . . . of the primary conception that federal judicial power is to be exercised to strike down

legislation, whether state or federal, only at the instance of one who is himself immediately

harmed, or immediately threatened with harm, by the challenged action."  *Poe v. Ullman*, 367

U.S. 497, 503-04 (1961) (footnotes omitted).  Federal courts "have no right to pronounce an ab-

stract opinion upon the constitutionality of a State law."  *Id.* at 504 (quotation omitted).

### A.     Plaintiffs lack standing.

Plaintiffs cannot carry their burden to show standing.  *See* Order, DE 18 at 4-5.  They

have not alleged facts sufficient to show that they will suffer an injury caused by any plausible

application of Section 416.  In the typical case, a statute must be enforced against a plaintiff be-

fore she may challenge its constitutionality, but pre-enforcement review is available in some con-

texts if "threatened enforcement [is] sufficiently imminent"—that is, if there is "a credible

threat" that the provision will be enforced against the plaintiff.  *Susan B. Anthony List v.

Driehaus*, 573 U.S. 149, 159, 160 (2014).

As this Court correctly ruled, "plaintiffs' alleged injury is not sufficiently concrete" to

justify the preenforcement challenge that they wish to bring.  Order, DE 18 at 5.  Plaintiffs con-

jure fictional injuries caused by an imaginary refusal to count absentee ballots.  Plaintiffs' thin

factual allegations make clear that there is no imminent threat of an election official refusing to

count a valid absentee ballot, whether submitted by Plaintiffs or other Arkansans, solely because

the clock strikes 7:31 PM.  To show an injury-in-fact, a plaintiff must show "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006).  Plaintiffs have not carried that burden.  Therefore, their purported injury is not sufficiently imminent for Article III purposes.  *See Lujan*, 504 U.S. at 564 n.2 (quotation and citation omitted) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending.").

Second, Plaintiffs lack standing because there is no causal relationship between any conceivable injury and Section 416.  To demonstrate a causal connection, a plaintiff must show that the injury is "fairly traceable" to the defendant.  *Lujan*, 504 U.S. at 560.  But because Section 416 does not prohibit counting absentee ballots after polls close, Plaintiffs cannot meet this element either.

And third—with no injury or causal connection—Plaintiffs have no claim that is likely to be redressed by a favorable decision.  Regardless of the outcome of this lawsuit, Section 416 will not prohibit Arkansas election officials from counting absentee ballots that remain after the polls close.  For any or all of these reasons, Plaintiffs lack standing, and they should be dismissed.

### B.    Plaintiffs' claims are not ripe.

For similar reasons, Plaintiffs' claims are not ripe for adjudication.  "[T]he ripeness inquiry requires examination of both **[1]** the fitness of the issues for judicial decision and **[2]** the hardship to the parties of withholding court consideration."  *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (quotation, citation, and alteration omitted).  "The fitness prong safeguards against judicial review of hypothetical or speculative disagreements."  *Id.* (quotation and citation omitted).  "The hardship prong asks whether delayed review inflicts significant practical harm on

the plaintiffs.  *Id.* (quotation and citation omitted).  "The touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant judicial intervention.  A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.* at 875-76 (quotations and citations omitted).

Plaintiffs bear the burden of providing factual allegations that suffice to plausibly satisfy both the fitness and hardship prongs.  Viewing the complaint in that light, their allegations do not even rise to a speculative level because they do not allege facts sufficient to show that they will suffer harm caused by any legitimate application of Section 416.  There is no chance that Arkansas law will cause Pulaski County election officials (the county where Plaintiffs allegedly reside) to stop counting absentee ballots at 7:30 PM on Election Day because Section 416 does not prohibit counting after that time.

But even if the Court were to read into the complaint factual allegations that absentee ballots remaining after 7:30 PM may go uncounted, their claims would still rest on purely contingent future events that "may not occur as anticipated, or indeed may not occur at all."  *Id.* at 875-76.  Plaintiffs have likewise articulated no reason to believe that this Court's denying review will cause him any harm—to say nothing of the "significant practical harm" required under the second prong of the ripeness test.  *Id.* at 875.  Because Plaintiffs claims are not fit for judicial decision and because the Court's withholding review will not cause any hardship to the parties, they are not ripe for adjudication, and they should be dismissed.

### C.    Plaintiffs' claims are moot.

Plaintiffs' claims are also now moot.  "A court properly dismisses a claim as moot if it has lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract questions of law."  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (quotation and citation omitted).

In response to media coverage of Plaintiffs' lawsuit, the chair of the Green County Election Commission submitted a petition requesting that the State Board of Election Commissioners issue a declaratory order answering the following question: "Does Arkansas Code Annotated section 7-5-416(a)(5)(A) or section 7-5-416(d) prohibit the counting of timely and sufficient absentee ballots after the close of the polls on election day?"  Shults Decl., DE 14-1 (attached "Petition for a Declaratory Order"); *see* Order, DE 18 at 3-4.  Arkansas law empowers the State Board with authority to interpret the pre-close counting requirement, and it has never interpreted the provision as prohibiting vote counting after the polls close.  Order, DE 18 at 3.  Plaintiffs and Ms. Inman are the only ones to advance a contrary notion.  *Id.*  At its regularly scheduled October 28 meeting, the State Board issued an order answering this question.  *Id.* at 3-4.

A declaratory order is issued by the State Board's authority under Arkansas Code Annotated section 25-15-203(a) and -206 and the State Board's Rules of Practice and Procedure, section 1104.  Shults Decl. ¶¶ 4, 6.  The Board's Declaratory Order resolves the proper interpretation of sections 7-5-416(a)(5)(A) and -416(d) as to the Greene County Election Commission, and will serve to advise all other county election commissions of their duties under those statutory sections, as they are all similarly situated.  *Id.* ¶¶ 5-6  Plaintiffs asked for a "legally enforceable assurance that . . . election officials will not stop counting" when the polls close.  DE 11 at 2.  The State Board's Declaratory Order is precisely that, and any semblance of a controversy created by Plaintiffs' idiosyncratic interpretation of Section 416 is negated by it.

Plaintiffs could not avoid mootness by claiming that Defendants have voluntarily ceased the challenged conduct.  A defendant's voluntary cessation moots a case only when that conduct cannot reasonably be expected to recur.  *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000).  Given the State Board's Declaratory Order, it would be proper to say that the conduct

Plaintiffs challenge cannot reasonably be expected to recur—except that Arkansas election officials never enforced Section 416 according to Plaintiffs' confused interpretation to begin with. So it is improper even to speak of "cessation."  In any event, Plaintiffs' claims are moot and should be dismissed.

> **D.      This action lacks adversity.**

Finally, this action also lacks the adversity necessary to constitute it as a justiciable controversy.  *Hohn v. United States*, 524 U.S. 236, 241 (1998).  This case is like *Poe v. Ullman*, where Plaintiffs challenged an 1879 Connecticut statute that prohibited the use of contraceptives.  *See generally* 367 U.S. 497 (1961).  The plaintiffs did not clearly allege that the State was going to take any action adverse to them but claimed only that the State's attorney regarded contraceptive use as an offense.  *Id.* at 501.  In fact, the State's Attorney had elected *not* to prosecute anyone under the statute.  *See id.* at 501-02.  The Court explained that, "within the framework of our adversary system, the adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity."  *Id.* at 503.  Therefore, "any cause that is not in any real sense adversary, that does not assume the honest and actual antagonistic assertion of rights to be adjudicated" is "unfit for adjudication."  *Id.* at 505.  Adversity is "a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication of constitutional questions by this Court."  *Id.* (quotations and citation omitted).  "These considerations press with special urgency in cases challenging legislative action or state judicial action as repugnant to the Constitution."  *Id.* at 503.

This case is like *Poe* because it is not adversarial.  To begin with, Plaintiffs have not alleged that any election official anywhere in Arkansas has ever shared their peculiar view that Section 416 prohibits the counting of absentee ballots after the polls close.  Defendants likewise

have not taken that position.  "The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it." *California v. San Pablo & T.R. Co.*, 149 U.S. 308, 314 (1893).  Plaintiffs' claims here are not subject to the crucible of controversy that the U.S. Supreme Court has declared to be indispensable to the judicial proceedings of Article III courts.  So this action does not constitute an Article III controversy.

## II.     Sovereign immunity bars Plaintiffs' claims.

The United States Constitution, including the Eleventh Amendment, absolutely bars suits brought against a state or its agencies or departments, regardless of the relief sought.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The same applies to suits brought against state officials in their official capacities.  *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam).  Plaintiffs have sued Defendants in their official capacities only.  Am. Compl. ¶¶ 6-7.

Plaintiffs seek declaratory and injunctive relief in an attempt to invoke the *Ex parte Young* exception, which allows a narrow range of actions against public officials.  209 U.S. 123 (1908); *see Papasan v. Allain*, 478 U.S. 265, 276-77 (1986).  True, the Defendants are potentially subject to suit under *Ex Parte Young*, but the rule permits only a suit seeking prospective relief against an *ongoing* violation of a federal right.  *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  As explained more fully below, Plaintiffs have not adequately pled claims for injunctive or declaratory relief because they do not face an ongoing violation of any constitutional right.  *See, e.g.*, *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).  As such, Defendants are entitled to sovereign immunity and Plaintiffs' complaint should be dismissed in its entirety.

Further, Plaintiffs' claims under the Arkansas Constitution are specifically barred because *Ex parte Young*'s exception is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. "[W]hen a plaintiff alleges that a state official has violated *state* law[,] . . . the entire basis for the doctrine . . . disappears" because its purpose is to vindicate federal rights and, in the process, ensure the supremacy of federal law. *See id.*; *see also Va. Office for Protection & Advocacy*, 563 U.S. 247, 255-56 (2011) (endorsing *Pennhurst*); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("*Ex parte Young* gives life to the Supremacy Clause."). "[F]ederal courts are unable to order state officials to conform their conduct to state law." *Greene v. Dayton*, 806 F.3d 1146, 1150 (8th Cir. 2015). Because *Ex parte Young* does not apply to state-law claims, Plaintiffs' claim under the Arkansas Constitution is barred, and it should be dismissed with prejudice. *See Minnesota Voters All. v. Walz*, No. 20-CV-1688 (PJS/ECW), 2020 WL 5869425, at *7 (D. Minn. Oct. 2, 2020) (sovereign immunity barred claim brought under Minnesota's constitution).

## III. Plaintiffs have failed to state a claim upon which relief can be granted.

Even if Plaintiffs could overcome these serious jurisdictional and procedural obstacles, they could not state a claim upon which this Court could grant relief. Section 416 plainly requires counting before the polls close, but it does not prohibit counting any ballots that remain afterwards. In fact, Arkansas law unmistakably contemplates that at least some ballots will be counted after polls close. Further, canons of statutory construction dictate that, to avoid absurdity and constitutional repugnance, timely and validly cast ballots remaining after the polls close must be counted. Finally, even mandatory election procedures become merely directory after the polls close. For each of these reasons, the counting of timely and validly cast absentee ballots must be completed regardless of how long that process takes. Plaintiffs cannot succeed on the

merits, and they are entitled to no relief.  Therefore, the Court should grant Defendants' motion and dismiss Plaintiffs' claims.

### A.      Section 416 does not prohibit counting after the polls close.

Plaintiffs suggest, without evidence, that Section 416 prohibits the counting of absentee ballots after the polls close at 7:30 PM on Election Day.  That suggestion has no factual support—not even *alleged* factual support.  As already noted, Plaintiffs' counsel himself said to the media that he had no reason to believe that such counting would be prohibited.  Satter, *supra*, *Suit filed over law on ballot counting*.

Under Arkansas law, "the primary rule of statutory interpretation is to give effect to the intent of the legislature." *BHC Pinnacle Pointe Hosp., LLC v. Nelson*, 594 S.W.3d 62, 73 (2020).  "[T]he court will look to the plain and ordinary meaning of the text," and where there is no facial ambiguity, "there is no need to resort to the canons of statutory construction." *Willis v. King*, 98 S.W.3d 427, 429 (2003).  The Court must "reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part." *Nelson*, 594 S.W.3d at 73.  "Furthermore, [courts] will not read into a statute language that was not included by the legislature." *Id.*

The Arkansas General Assembly did not enact any provision stating that the counting of ballots after the close of the polls on Election Day is prohibited, and the State Board has never taken the position that timely and validly cast ballots should go uncounted. *See* Shults Decl. ¶¶ 6-7.  Plaintiffs arrive at their contrary, stilted interpretation of Section 416 only by studiously refusing to read the related statutory provisions consistently and sensibly to give effect to every part. *See* Am. Compl. ¶¶ 20-39.  Indeed, Plaintiffs themselves recognize that their interpretation is *inconsistent* with those provisions of law. *See id.* ¶¶ 29-39 (discussing ways in which other provisions conflict with Plaintiffs' interpretation).

Section 416 provides, "Absentee and early votes shall be counted prior to the closing of the polls on election day as provided under this section."  Ark. Code Ann. 7-5-416(a)(5)(A). Further, "[i]t is the intent of this section to require the election officials for absentee ballots to meet and process, canvass, and count absentee ballots according to this section prior to the closing of the polls on election day."  *Id.* 7-5-416(d).

These provisions require counting before the polls close.  They say nothing about *prohibiting* counting *after* the polls close.  This case is similar to *Our Community, Our Dollars v. Bullock*, where the Arkansas Supreme Court rejected a similar attempt to read a prohibition into a time-related election provision.  452 S.W.3d 552, 563 (2014).  Objectors challenged the certification of a local-option petition, arguing that a law providing ten days to cure a signature deficiency after notice of insufficiency prohibited the gathering of signatures prior to that period.  *Id.* The court held that although the law envisioned the collection of signatures after the notice of insufficiency, "there is nothing in the statute that expressly prohibits a sponsor from collecting signatures" beforehand.  *Id.*  It reiterated that, "[i]n construing statutes, this court will not add words to a statute to convey a meaning that is not there" and "will not read into a statute a provision not put there by the General Assembly."  *Id.*

As more evidence that Plaintiffs have misinterpreted Section 416, Arkansas law elsewhere expressly contemplates the counting of ballots after the close of the polls on Election Day:

- "*Upon the close of the polls*, the poll workers immediately shall certify and attest the list of voters and *continue the count to completion*."  Ark. Code Ann. 7-5-603(3)(A) (emphasis added).  Indeed, "[i]f a poll worker becomes sick or incapacitated from any other cause, the remaining poll workers shall *continue the count until it is completed*."  *Id.* 7-5-603(3)(B) (emphasis added).

- A first-time voter's absentee ballot that becomes provisional due to a failure to provide required identification "*shall be counted*" if the voter resolves the issue "by 12:00 noon on the Monday following the election."  Ark. Code Ann. 7-5-308(f)(2)(A).

- Absentee ballots of active military personnel executed by Election Day "*shall be counted*"—even if they are not received until the tenth day *after* the election.  Ark. Code Ann. 7-5-411(a)(1)(B)(ii) (emphasis added); *see id.* 7-5-411(a)(1)(B)(i) (similar provision for overseas voters).

- "Absentee voting *may be accomplished*" by ballots that are mailed and received by the county clerk by "7:30 p.m. on election day."  Ark. Code Ann. 7-5-411(a)(1)(A) (emphasis added).  But ballots that are *delivered to the county clerk* by 7:30 PM plainly cannot have been already *counted by election officials* by 7:30 PM.  So counting those ballots after 7:30 PM is plainly necessary to ensure that voting is "accomplished."  *Id.*; *see id.* 7-5-412(c) (county clerk must "promptly" deliver any "absentee ballots received by mail on election day before the polls close . . . to the election officials designated to canvass and count absentee ballots").

By express legislative design, absentee-ballot counting remains unfinished every year when the polls close on Election Day.

Nevertheless, Section 416 serves the important purpose of reducing opportunities for late-night absentee ballot-box stuffing by ensuring that counting is already underway by the time the polls close.  In opposition to Plaintiffs' preliminary-injunction motion, Defendants detailed the history of absentee-ballot fraud in Arkansas.  *See* Resp. in Opp. to Mot. for Prelim. Inj., DE 14 at 5-7.  Section 416 seeks to rectify this history of absentee-ballot fraud by creating a uniform time-line for all counties to follow.  By requiring counties to begin counting "prior to the closing of the polls," provisions like Section 416 ensure that counting begins during the day rather than the middle of the night, which reduces the likelihood that ballot fraud can go undetected.  Ark. Code Ann. 7-5-416(a)(5)(A).  And by requiring counties to report an "initial count" to the Secretary of State "as soon as practical after the polls close on election day," such provisions ensure that counties cannot drag ballot counting on.  *Id.* 7-5-416(a)(5)(B)(i).  Prompt election returns leave less time for fraudulent counting measures.

Section 416 envisions the counting of absentee ballots will *begin* before the polls close, but it does not conversely prohibit counting absentee ballots afterwards.  To convey that meaning, it would be necessary to insert language into the statute so that it reads, "Absentee and early

votes shall be counted prior to the closing of the polls . . . [*and none shall be counted thereaf-*

*ter*].” Ark. Code Ann. 7-5-416(a)(5)(A).  Because that italicized language is not present, and be-

cause Arkansas law unmistakably contemplates post-close ballot counting, Section 416 contains

no arbitrary 7:30 PM deadline.  Plaintiffs’ contrary claims hinge on a warped interpretation of

Section 416 that disregards its plain text.  As a result, they have failed to state a claim upon

which this Court can grant relief, and the Court should grant this motion to dismiss.

     **B.**    **Canons of statutory construction rule out any inference that ballots remain-
ing after the polls close must go uncounted.**

     Interpreting Section 416 is straightforward, thus there is no need to resort to canons of

statutory interpretation.  But even if the Court finds Section 416 ambiguous as to what happens

to uncounted ballots at 7:30 PM on Election day, well-settled canons rule out any inference that

ballots remaining after the polls close must go uncounted.  Under both the absurdity canon and

the constitutional-avoidance canon, the Court should reject Plaintiffs’ singular interpretation of

Section 416 and grant Defendants’ motion.

     First, “an important canon of statutory construction” is that courts do “not engage in in-

terpretations that defy common sense and produce absurd results.”  *Nucor Corp. v. Kilman*, 186

S.W.3d 720, 729 (2004); *see In re Bailey*, 771 S.W.2d 779, 781 (1989) (even ostensibly manda-

tory provisions are not interpreted as such when that interpretation leads to absurd results).  This

canon of construction has a long pedigree; as early as 1935, the Eighth Circuit was already call-

ing it a “well-settled rule.”  *U.S. ex rel. Anderson v. Anderson*, 76 F.2d 375, 378 (8th Cir. 1935).

According to the absurdity canon, “interpretations of a statute which would produce absurd re-

sults are to be avoided if alternative interpretations consist[e]nt with the legislative purpose are

available.”  *Monahan v. Flannery*, 755 F.2d 678, 682-83 (8th Cir. 1985) (quoting *Griffin v. Oce-*

*anic Contractors, Inc.*, 458 U.S. 564, 575 (1982)).  An interpretation of Section 416 that produces the absurd result that county clerks must cease counting absentee ballots at the close of polls should be avoided because there is an alternative interpretation consistent with the legislative purpose of counting every vote cast by an absentee ballot.

Plaintiffs admit that their interpretation is absurd.  *See* Am. Compl. ¶ 27 (asserting that if their stilted interpretation of the pre-close counting requirement "sounds impossible, that's because it is").  According to Plaintiffs' interpretation, Section 416 both: (1) bars officials from counting any absentee ballots *before* polls close; and simultaneously (2) bars officials from counting any absentee ballots *after* polls close.  *See, e.g.*, *id.* ¶ 32.  According to Plaintiffs, therefore, the Arkansas General Assembly has permitted absentee voting only to also prohibit election officials from counting any absentee ballots.  The Court should not adopt Plaintiffs' absurd interpretation of Section 416.  It would "defy common sense" to read the provision as Plaintiffs do. *Nucor Corp.*, 186 S.W.3d at 729.

Second, this Court should also reject Plaintiffs' interpretation under the canon of constitutional avoidance.  It is a "cardinal canon of construction that a statute will be upheld unless clearly within constitutional inhibition, and where that question is doubtful the doubt must be resolved in favor of the constitutionality of the act." *Bollinger v. Watson*, 63 S.W.2d 642, 644 (1933).  "It is a bedrock principle of statutory interpretation that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Union Pac. R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 892-93 (8th Cir. 2013) (quotation and citation omit-

ted).  "[A statute] ought not be construed to violate the Constitution if any other possible construction remains available."  *Id.* at 893 (quoting *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 500 (1979)).

The most that can be said of Plaintiffs' interpretation is that they have identified some potential ambiguities in Arkansas law.  It is clear that counties must begin counting absentee ballots before polls close.  Insofar as Section 416 does not define when they must *stop* counting absentee ballots, it should be interpreted to allow the counting of ballots until a time that would avoid constitutional issues.  *See Phelps-Roper v. Ricketts*, 867 F.3d 883, 890, 897-98, 897 n.2 (8th Cir. 2017) (where statute did not define "protest activities," the court interpreted the term to encompass plaintiff standing near a funeral, in order to avoid constitutional issues).  Interpreting Section 416 to require county clerks to arbitrarily disenfranchise voters whose ballots happened to remain uncounted at 7:31 PM on Election Day would raise serious questions under the First and Fourteenth Amendments to the U.S. Constitution, and under Article 3, section 2 of the Arkansas Constitution.  Therefore, any doubt must be resolved in favor of the pre-close counting requirement's constitutionality by adopting a construction that avoids that repugnant implication.  In this case, that means refusing to read into Section 416 an implicit prohibition on counting ballots after polls close.

Relevant canons of statutory construction show that Section 416 must be construed not to prohibit the counting of votes remaining after the polls close.  Therefore, it does not prohibit post-close counting.  Plaintiffs have failed to state a claim, and the Court should grant Defendant's motion to dismiss.

### C.     Under Arkansas law, Section 416 and other election provisions become merely directory after the polls close.

To be absolute clear:  Section 416 does not even arguably require election officials to arbitrarily stop counting valid ballots at 7:31 PM on Election Day.  But even if Plaintiffs' erroneous contrary interpretation were correct—even if, in other words, Plaintiffs were correct that Section 416 required that election officials "must finish" or "complete counting" when the polls close on Election Day, Am. Compl. ¶¶ 1, 47, that requirement would become merely directory at the closing of the polls.  *See* "Directory Requirement," Black's Law Dictionary (11th ed. 2019) ("A statutory or contractual instruction to act in a way that is advisable, but not absolutely essential—in contrast to a mandatory requirement.").  Because Section 416 contains no such requirement, and because no Arkansas court would interpret such a requirement to disenfranchise Arkansans, Plaintiffs have failed to state a claim.

"In determining whether the words of a statute shall have a mandatory or directory effect ascribed to them, the purposes of the act, the end to be accomplished, the consequences that may result from one meaning or the other, and the context are to be considered."  *Phillips v. Rothrock*, 110 S.W.2d 26, 30 (1937).  Here, Section 416 serves to reduce opportunities for late-night ballot-box stuffing by ensuring that absentee-ballot counting must begin before the polls close.  As explained above, the immediate statutory context of the requirement includes several provisions that unmistakably contemplate the counting of ballots after the close of the polls.  Further, as Plaintiffs' witness, Susan Inman, testifies, in her "decades of involvement with elections in Arkansas, there were always uncounted absentee ballots at 7:30 pm on election night."  DE 9-1 at 3 ¶ 9.  The consequence of construing Section 416 as prohibiting post-close counting and interpreting this language as mandatory would result in the objectionable result that some absentee voters are arbitrarily disenfranchised.

Fortunately, "Arkansas's well-established rule [is] that election procedures are mandatory before an election but are only directory after the election." *Alexander v. Davis*, 58 S.W.3d 330, 336 (2001). Indeed, "election laws . . . are mandatory before the election and merely directory after the election, so that voters *will not be disfranchised by the failure of election officials to perform certain duties*." *Christenson v. Felton*, 295 S.W.2d 361, 363 n.5 (1956) (emphasis added). In other words, the Arkansas Supreme Court has made clear Arkansas election laws will not be interpreted to create arbitrary barriers to counting validly submitted votes.

Plaintiffs' interpretation of Section 416 violates this principle. Section 416 becomes merely directory after the polls close, and the counting of timely and validly cast absentee ballots must be completed regardless of how long that process takes. Plaintiffs fail to state a claim, and the Court should grant Defendant's motion to dismiss.

## Conclusion

For these reasons, Defendants respectfully request that the Court grant this motion to dismiss.

Respectfully submitted,

Leslie Rutledge
  Arkansas Attorney General

Vincent M. Wagner (2019071)
  Deputy Solicitor General

Michael A. Cantrell (2012287)
  Assistant Solicitor General

Michael A. Mosley (2002099)
  Assistant Attorney General

Office of the Arkansas
  Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-8090
(501) 682-7395
vincent.wagner@arkansasag.gov

*Attorneys for Defendants*