**STATE BOARD OF ELECTION COMMISSIONERS**
501 Woodlane – Suite 122 South
Little Rock, Arkansas 72201
(501) 682-1834 or (800) 411-6996

Secretary of State
**John Thurston**
Chairman

**Sharon Brooks**
**Bilenda Harris-Ritter**
**William Luther**
**Charles Roberts**
**James Sharp**
**J. Harmon Smith**
Commissioners

**Daniel J. Shults**
Director

**Chris Madison**
Legal Counsel

**Jon Davidson**
Educational Services Manager

**Tena Arnold**
Business Operations Manager



# DECLARATORY ORDER
## 2020-002

The State Board of Election Commissioners (SBEC), having received a written request filed on October 26, 2020 from The Hon. Don Farmer, Chairman of the Greene County Board of Election Commissioners requesting the SBEC issue a Declaratory Order pursuant to its authority under Ark. Code Ann. §25-15-206 and SBEC Rule §1104, hereby states the following:

1. The State Board finds that it has the authority to issue the requested order based on the fact the controlling sections of law are election law and the State Board is empowered to enforce election and voter registration laws. Ark. Code Ann. §7-4-120(a). In addition, the petition's requests deal exclusively with the actions of county election officials responsible for conducting election processing of absentee ballots and their actions regarding elections are subject to the State Board's enforcement authority. State agencies are required to hear petitions for declaratory orders regarding the applicability of any rule, statute, or order enforced by that agency. Ark. Code Ann. §25-15-206.

2. The State Board bases its analysis on the following facts set out in writing by Chairman Farmer. Chairman Farmer states that, recently, questions concerning the counting of absentee ballots have arisen in the media. He states that the reports have suggested that the process of opening and counting absentee ballots must be completed prior to the close of the polls at 7:30 p.m. on election day per Ark. Code Ann. § 7-5-416(a)(5)(A). He states that the GCBEC has never understood this section as prohibiting the processing of timely and sufficient absentee ballots which are waiting to be counted simply because the process could

not be completed prior to 7:30 p.m. He states further that neither the SBEC or the Secretary of State's office have ever given an instruction that the counting of timely and sufficient absentee ballots must stop at 7:30 p.m. solely because of this section of code.

## Question Before the SBEC

3. Chairman Farmer submits one question regarding absentee ballot counting, in which he asks:

> "Does Arkansas Code Annotated section 7-5-416(a)(5)(A) or section 7-5-416(d) prohibit the counting of timely and sufficient absentee ballots after the close of the polls on election day?"

4. The Question requires the SBEC to determine whether county election officials must stop counting absentee ballots at 7:30 p.m. on election night despite the fact these ballots have met all legal requirements to be counted.

## Holding of the SBEC

5. In response to this question, the SBEC states unequivocally that state election law requires the CBEC to count every ballot that is returned by the statutory deadlines and which satisfies the substantive requirements governing whether an absentee ballot can be counted, even if the actual process of counting continues past 7:30 p.m. on election night. A.C.A. §§ 7-5-416(a)(5)(A) and 7-5-416(d). Moreover, it would be a violation of state election law to fail to count all ballots which are eligible to be counted regardless of how long the process takes. See, A.C.A. §§7-1-104(a)(14) and 7-5-416(b)(1)(N).

6. The sections at issue here do not constitute a deadline to complete the process of counting but, rather, they are a statutory mandate to the CBEC to schedule and staff the process of canvassing and counting absentee ballots so that the process can be concluded by the closure of in-person voting at 7:30pm. If, for any reason, the CBEC fails to satisfy this

Page **2** of **6**
**Declaratory Order 2020-002**

intent of the section the process of counting must continue until it is completed.

7. In reaching this conclusion the SBEC notes that both sub-sections of A.C.A. § 7-5-416 at issue here are qualified in such a way as to clarify any ambiguity that might otherwise exist. Subsection (a)(5)(A) states that the vote shall be counted prior to the closure of the polls "as provided under this section." Subsection (d) is prefaced with "It is the intent of this section to require the election officials…" to count the ballots prior to the closure of the polls. It is the opinion of the SBEC that the purpose of this qualification is to clarify that both provisions must be read consistently with A.C.A. § 7-5-416(b)(1)(N). This provision has no qualification whatsoever and requires the counting of all ballots which the preceding processes determined are legally eligible to be counted.

8. Furthermore, when interpreting legal text, the SBEC will not read a law in such a way that leads to an absurd result. To conclude that A.C.A. §§ 7-5-416(a)(5)(A) and 7-5-416(d) require valid and timely ballots to be rejected simply because election officials could not complete a ministerial process is absurd and is inconsistent with the plain language of the text.

## ADDITIONAL ANALYSIS

9. As addressed below, when looking beyond the provisions of A.C.A. §7-5-416, it becomes even more clear that the provisions in question do not prohibit county election officials to complete the process of counting ballots.

10.    A.C.A. § 7-5-416(a)(5)(B)(i) provides an explanation for the rationale behind the provisions in stating "[t]he county board of election commissioners shall report by precinct the initial count of early votes and absentee ballot votes to the Secretary of State as provided under § 7-5-701 **as soon as practical after the polls close on election day**." (emphasis added).

11. This rationale is also provided in A.C.A. § 7-5-701(a)(3)(A) which states: "**[a]s results are received and tabulated** on election night for

all state and federal elections, the county board of election commissioners shall declare preliminary and unofficial results of the election **as soon as early voting, absentee**, or individual precinct results are tabulated on election night and immediately transmit the results by precinct to the Secretary of State…." (emphasis added). Subsection (a)(3)(C)(i)(*a*)-(*b*) continues, "[o]n election night for all state and federal elections, **immediately after the count of the vote is complete**, the county board of election commissioners shall: (i) [d]eclare preliminary and unofficial results of the election, including a statement of the number of outstanding: (*a*) [b]allots of voters who requested ballots under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et. Seq.; and (*b*) [p]rovisional ballots…."

12. In addition, there are several provisions of state election law which explicitly require absentee ballots to be counted after the polls close. These provisions are referenced below and further demonstrate that any reading of 7-5-416 which suggests counting cannot occur after 7:30 p.m. is flawed.

13. A.C.A. § 7-5-323 requires that any "absentee ballot [that] is deemed a provisional ballot for failure to provide verification of registration under Arkansas Constitution Amendment 51 § 13, the voter shall comply with the procedures under Arkansas Constitution, Amendment 51 § 13, for his or her vote to be counted." Amendment 51 § 13 (b)(3)(A) provides that "a voter voting by absentee ballot [who] fails to submit with the ballot documentation that complies with subdivision (b)(1)(A)(ii) of this section, the absentee ballot shall be considered a provisional ballot." A provisional absentee ballot "shall be counted if … (B)(i) [t]he voter returns to the county board of election commissioners or the county clerk **by 12:00 noon on the Monday following the election** and presents a document or identification card that complies with the requirements of subdivision (b)(1)(A)(i) of this section…." (emphasis added).

14. A.C.A. § 7-5-411(a)(1)(B)(i) provides that absentee ballots requested by electors residing outside the United States "applied for not later than thirty (30) days before the election … that are signed, dated, postmarked, and mailed by the voters no later than the day of the election

and received by the county clerk no later than 5:00 p.m. ten (10) days after the election" will be counted. Similarly, subsection (ii) provides that the absentee ballots of armed services personnel serving in active status returned to the county clerk "no later than 5:00 p.m. ten (10) calendar days after the date of the election, and if the absentee ballots were executed no later than the date of the election" will be counted.

15. A.C.A. § 7-5-308(e)(1) requires the county board of election commissioners to determine whether provisional ballots are valid before certifying the results of the election.

16. Although the SBEC does not enforce federal election law in this area, it does interpret state election law consistent with the requirements of federal law. Any election official that refuses to tabulate timely and sufficient absentee votes will also violate federal law. See, 52 U.S.C. § 10307(a) ("No person acting under color of law shall … willfully fail or refuse to tabulate, count, and report such person's vote").

## CONCLUSION

17. Taking the entire process into account, while it is the "intent" for absentee votes to be counted by the close of polls on election night, the law accepts that counting and tabulation may continue after the polls close on election night. Election officials are directed to process these unofficial results and report them "as soon as practical after the polls close on election day." A.C.A. § 7-5-701(a)(3)(A) anticipates results and tabulation to be an ongoing process on election night, and that as soon as absentee results are tabulated they be immediately transmitted to the Secretary of State.

18. The law even recognizes that certain ballots will not be counted until sometime after the polls close. Provisional ballots made provisional under Arkansas Constitution, Amendment 51, for example, cannot be determined until 12:00 p.m. noon on the Monday following the election. Similarly, the law allows additional time for overseas ballots and ballots of service members, that are signed and transmitted by election day, to be counted if received within ten (10) days after election day.

19. The law is written so that canvassing and counting of absentee ballots has a distinct start time for which the local CBEC can begin processing absentee ballots. It is the "intent" to complete this process by the close of the polls on election day, but it is recognized that complete tabulation of all ballots may, and usually does, continue past the close of the polls on election day.

20. The law requires the "certification" of the results be made no earlier than forty-eight (48) hours after the election, and not later than fifteen (15) calendar days after the election. Thus, election night is an intended goal, and one that CBECs should seek to achieve, but the law recognizes that legal requirement of certification and final tabulation will not occur until a point in time after the polls close. The legal requirement for complete tabulation of all timely and sufficient ballots must occur no later than fifteen (15) calendar days after election day.

21. Consequently, the SBEC finds that neither Arkansas Code Annotated sections 7-5-416(a)(5)(A) or section 7-5-416(d) prohibit the GCBEC from continuing the counting of timely and sufficient absentee ballots after the close of the polls on election day."

The forgoing Order is approved and adopted by the State Board of Election Commissioners on October 28, 2020. As evidence of its adoption, the State Board instructs the Director of the SBEC to affix his signature to this Order.

_____
Daniel J. Shults
SBEC Director